UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| REBECCA SUE BOGNER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL, Acting ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) | CIVIL NO. 1:16cv336 |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) and for Supplemental Security Income (SSI) as provided for in the Social Security Act. 42 U.S.C. §416(I). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

    1.    The claimant meets the insured status requirements of the Social Security Act

through December 31, 2017.

2. The claimant has not engaged in substantial gainful activity since March 22, 2013, the date the claimant became disabled (20 CFR 404.1520(b),404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. From March 22, 2013 through March 1, 2015, the period during which the claimant was under a disability, the claimant had the following severe impairments: degenerative joint disease of the right hip, status post total hip arthroplasty in April 2013, degenerative disc disease of the lumbar spine, status post back surgery in January 2015, osteoarthritis of the knees bilaterally and morbid obesity (20 CFR 404.1520(c) and 416.920(c)).

4. From March 22, 2013 through March 1, 2015, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that, from March 22, 2013 through March 1, 2015, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), in that she was capable of sitting 6 hours out of an 8-hour workday, standing and/or walking 2 hours out of an 8-hour workday, lifting, carrying, pushing, and pulling 10 lbs. frequents and occasionally throughout the workday, and could perform work requiring occasional use of pedals and controls with the feet. She required opportunity to alternate postural positions every 20 minutes while remaining on task, and was limited to occasional use of ramps and stairs, one to two flights with rails, as well as occasional balancing, occasional bending and stooping in addition to what is already required to sit, occasional kneeling, occasional crouching, no crawling, and not climbing of ropes, ladder, or scaffolds. The claimant could perform no work on wet surfaces, no work within close proximity to hazards of open heights and open and dangerous machinery, and required a cane for prolonged ambulation upon uneven surfaces.

6. From March 22, 2013 through March 1, 2015, the claimant was unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was an individual of advanced age, on the established disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

3

9. The claimant's acquired job skills do not transfer to other occupations with the residual functional capacity defined above(20 CFR 404.1568 and 416.968).

10. From March 22, 2013 through March 1, 2015, considering the claimant's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.156o(c), 404.1566, 416.960(c), and 416.966).

11. The claimant was under a disability, as defined in the Social Security Act, from March 22, 2013 through March 1, 2015 (20 CFR 404.1520(g) and 416.920(g)).

12. The claimant has not developed any new impairment or impairments since March 2, 2015, the date the claimant's disability ended. Thus, the claimant's current severe impairments are the same as that present from March 22, 2013 through March 1, 2015.

13. Beginning March 2, 2015, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1594(f)(2) and 416.994(b)(5)(i)).

    The objective medical record does not establish that the severity of the claimant's impairments, individually or in combination, meets or equals any listed impairment.

14. Medical improvement occurred as of March 2, 2015, the date the claimant's disability ended (20 CFR 404.1594(b)(1) and 416.994(b)(1)(i)).

15. The medical improvement that has occurred is related to the ability to work because there has been an increase in the claimant's residual functional capacity (20 CFR 404.1594(b)(4)(i) and 416.994(b)(1)(iv)(A)).

16. After careful consideration of the entire record, the undersigned finds that, beginning March 2, 2015, the claimant has had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), in that she is capable of sitting 6 hours out of an 8-hour workday, standing and/or walking 2 hours out of an 8-hour workday, and lifting, carrying, pushing, and pulling 10 lbs. frequently and occasionally throughout the workday. She is limited to occasional use of pedals and controls with the scheduled breaks or every two hours. She is limited to occasional use of ramps and stairs, one to two flights with rails as well as occasional balancing, occasional bending and stooping in addition to what is already required to sit, occasional kneeling, occasional crouching, no crawling and no climbing of ropes, ladder, or scaffolds. She should

> not work on wet surfaces or perform work within close proximity to hazards of open heights and open and dangerous machinery. She requires a cane for prolonged ambulation and upon uneven surfaces.

17. Beginning March 2, 2015, the claimant has been capable of performing past relevant work as Insurance clerk. This work does not require the performance of work-related activities precluded by the claimant's current residual functional capacity (20 CFR 404.1565 and 416.965).

18. The claimant's disability ended March 2, 2015 (20 CFR 404.1594(f)(7) and 416.994(b)(5)(vi)).

(Tr. 28-40)

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff, proceeding *pro se*, filed her opening brief on January 19, 2017. On May 1, 2017, the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on June 6, 2017. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops

>the inquiry and leads to a determination that the claimant is not
>disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step four was the determinative inquiry.

The issue before the court is whether substantial evidence supports the ALJ's decision that Plaintiff was disabled before March 1, 2015, but was not disabled after March 1, 2015 and could return to her prior work as an insurance clerk.

Plaintiff strongly contends that her condition was actually worsening as time went on, rather than improving, as the ALJ found in his decision. Defendant, however, maintains that substantial evidence supports the ALJ's decision that Plaintiff's disability ended on March 1, 2015.

Judicial review of an ALJ's decision rests on whether substantial evidence supported his residual functional capacity finding, which took all relevant evidence into account, including objective medical evidence, treatment, physician's opinions, as well as Plaintiff's own statements. 20 C.F.R. § 404.1545; *Diaz v. Chater*, 55 F.3d 300, 306, n.2. (7th Cir. 1995). When making his decision, the ALJ must build a logical bridge from the evidence to his conclusion. *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

In the present case, the ALJ found that the evidence showed that as of March 2, 2015, Plaintiff would only need to alternate during scheduled breaks or every two hours (Tr. 37), and as such, she could return to her prior work as an insurance clerk (Tr. 40).

Plaint underwent back surgery in February 2015, and Dr. Winters released her to return to

work as of March 2, 2015. The ALJ found that Plaintiff's complaints of right hip pain and bilateral knee pain supported a continued restriction to lifting only 10 pounds, but found that Plaintiff was no longer disabled as of March 2, 2015, as she could do sedentary work.

The ALJ gave significant weight to the opinion of Plaintiff's orthopedic surgeon, David J. Wittbrodt, M.D., who opined in June 2013 that she could perform "sit-down work" (Tr. 36-37, 553). Dr. Wittbrodt explained that while he felt Plaintiff could return to sit-down work, she was let go from her place of employment (Tr. 553). He opined that, if available, Plaintiff could perform sit-down work with intermittent sit and stand, a maximum two hours standing per day, and 10-pound lifting limit (Tr. 553). Dr. Wittbrodt repeated this opinion in July 2013, but added that Plaintiff should use a cane (Tr. 556).

The ALJ largely adopted the limitations from Dr. Wittbrodt's opinion, by limiting Plaintiff to sedentary work, which requires standing or walking only 2 hours per day and lifting only up to 10 pounds, as well as by adding requirements that she be allowed to alternate positions and use a cane (Tr. 36-37). The ALJ further explained that he gave significant weight to Dr. Wittbrodt's opinion because the objective evidence supported the opinion (Tr. 32). *See* 20 C.F.R. § 404.1527(c)(3). In addition, the ALJ found that Dr. Wittbrodt's opinion was consistent with Plaintiff's course of treatment (Tr. 32). See 20 C.F.R. § 404.1527(c)(4). The ALJ noted that Dr. Wittbrodt did not identify the frequency of Plaintiff's "intermittent" changes of position between sitting and standing (Tr. 32, 37). However, in considering Plaintiff's improved back pain and resolution of radicular symptoms, the ALJ found the Plaintiff did not need to change positions as frequently as of March 2, 2015 (Tr. 37). In support of this, the ALJ considered that Plaintiff had full strength, no pain with hip rotation, negative straight leg raise testing, and no report of

7

significant pain behaviors, such as guarding or acute distress (Tr. 37, citing Tr. 671). The ALJ further explained that he added numerous limitations beyond those listed by Dr. Wittbrodt to accommodate her back pain, knee pain, morbid obesity, and use of a cane (Tr. 33).

Plaintiff attended a functional capacity evaluation with Shirley Drier, OTR/CHT in June 2015 (Tr. 675-79). In giving little weight to Ms. Drier's opinion, the ALJ considered that she did not offer the opinion in the course of treatment, but instead, Plaintiff's disability lawyer referred her for an examination (Tr. 39). As a one-time examining source, Ms. Drier was not a treating source under the regulations. Accordingly, the regulations regarding treating source opinions do not apply to her opinion and it was not entitled to any specific weight. *See* 20 C.F.R. § 404.1502 ("Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you") (emphasis added); *White v. Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005) ("Dr. Zondag, who only examined White once, fits the definition of a nontreating source . . .").

The ALJ gave little weight to Ms. Drier's opinion, for reasons that tracked the regulations—namely that she was not a treating source; her opinion was not consistent with other evidence; she did not provide support for the limitations in her opinion; and she appeared to over-rely on Plaintiff's subjective complaints (Tr. 19). *Hofslien v. Barnhart*, 439 F.3d 375 377 (7th Cir. 2006) ("[A]s is well known, many physicians…will often bend over backwards to assist a patient in obtaining benefits."); *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) ("An ALJ may properly reject a doctor's opinion if it appears to be based on a claimant's exaggerated subjective allegations.").

8

In the case at bar, the ALJ found that Ms. Drier's opinion was not consistent with the other medical evidence of record, including notes from Plaintiff's treating sources, Drs. Almdale and Winters (Tr. 34, 39). See 20 C.F.R. § 404.1527(a)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Specifically, the ALJ contrasted Ms. Drier's opinion of significant limitations due to pain against records from Drs. Almdale and Winters, which showed improvement after her 2015 back surgery (Tr. 39). For example, Ms. Drier indicated that Plaintiff had significant limitations related to hip, back, and knee pain, but Plaintiff's treatment notes showed she was not taking pain medications as of March 2, 2015 (Tr. 39, citing Tr. 641).

The ALJ also contrasted Ms. Drier's report against evidence from Plaintiff's treating sources that she had good results after surgery, had full strength despite her claims of subjective weakness, had negative straight leg raise testing, and had no pain with hip range of motion (Tr. 36, 39). Likewise, the ALJ considered that Dr. Winters released Plaintiff to return to work as of March 2, 2015 with limitations only in lifting over 20 pounds, and no restrictions in standing or walking (Tr. 36, 39, citing Tr. 644). Further, the ALJ noted that Ms. Drier did not explain or provide support for several limitations in her opinion, such as her opinion that Plaintiff could only sit for two hours total and was unable to carry any weight (Tr. 39).

Clearly, the ALJ was not obligated to accept Ms. Drier's opinion where it contrasted significantly with other evidence of record, including the treatment notes and medical opinions from Plaintiff's treating sources. *See Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (if an "opinion is inconsistent with the consulting physician's opinion, internally inconsistent, or based solely on the patient's subjective complaints, the ALJ may discount it.").

9

Additionally, the ALJ discounted Ms. Drier's opinion because she relied excessively on Plaintiff's subjective reporting, such as her responses to a pain questionnaire and her claims that she could not continue testing due to pain (Tr. 34, 39, citing Tr. 677-78). The ALJ reasonably found that Ms. Drier's report was based more on Plaintiff's subjective reports than objective findings from examination (Tr. 39). Plaintiff's subjective complaints were not an appropriate basis for an opinion. *See Ketelboeter*, 550 F.3d at 625 (affirming ALJ's weighing of opinion where the "limitations were based almost entirely on Ketelboeter's subjective complaints rather than objective evidence"). The ALJ was also concerned that Ms. Drier was not a treating source, but that, rather, Plaintiff's disability attorney referred her to a doctor, who referred her to Ms. Drier, in connection with her disability claim (Tr. 39, referencing testimony at Tr. 81-82).

However, the ALJ reasonably gave significant weight to the opinions of the state agency medical experts and adequately articulated his reasons for doing so (Tr. 38). The state agency medical experts opined that Plaintiff could perform a reduced range of sedentary work, provided she must have the ability to alternate between siting and standing to relieve pain, but that this could be done within scheduled breaks or every two hours (Tr. 38, citing Tr. 98-101, 118-20). In giving significant weight to the opinions of the state agency experts, the ALJ noted that the doctors were familiar with assessing medical conditions in accordance with Social Security regulations (Tr. 38).

Moreover, the ALJ found that the state agency expert opinions were consistent with the whole record (Tr. 38), which he thoroughly discussed (Tr. 36-40). The ALJ also found that the state agency opinions that Plaintiff could perform sedentary work (which only requires lifting up

to 10 pounds) were consistent with Plaintiff's testimony that she could lift 10 pounds (Tr. 38, referencing testimony at Tr. 76 that Plaintiff could lift 10 pounds and could lift 15 pounds, but not consistently).

In Plaintiff's favor, the ALJ found that she had greater limitations than listed by the state agency doctors. For example, for the period prior to March 2, 2015, the ALJ found that Plaintiff required more frequent breaks than the experts opined, such that she would not be able to maintain employment and was disabled (Tr. 30, 33). And, for the period beginning March 2, 2015, the ALJ added a limitation that Plaintiff required a cane for prolonged ambulation and upon uneven surfaces. The ALJ's decision was thus supported by the opinions of the state agency medical experts, all of whom opined that Plaintiff's impairments did not rise to a disabling level.

The Seventh Circuit held in *Flener v. Barnhart* that it is "appropriate for an ALJ to rely on the opinions of physicians and psychologists who are also experts in social security disability evaluation." 361 F.3d 442, 447–48 (7th Cir. 2004). The Social Security regulations and rulings expressly recognize that state agency physicians are "highly qualified physicians who are also experts in Social Security disability evaluations." See 20 C.F.R. § 404.1527(f)(2)(i); SSR 96-6p, 1996 WL 374180; *see also Cass v. Shalala*, 8 F.3d 552, 555 (7th Cir. 1993) (agency may rely on conclusions of state agency physicians). The ALJ's reliance on these Social Security disability experts was substantially supported and legally sound. The ALJ was required to and did give consideration to the opinions of medical sources in evaluating whether Plaintiff was disabled, but the final responsibility for deciding an individual's specific work-related limitations is reserved to the agency. *See* 20 C.F.R. § 404.1527(e)(2); *Diaz*, 55 F.3d at 306, n.2 ("[T]he SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has

the responsibility of resolving the conflict."). The opinions of Drs. Winters and Wittbrodt, and the two state agency experts all supported finding that Plaintiff was not disabled, but to Plaintiff's benefit, the ALJ found greater limitations than each of these doctors opined. The ALJ properly resolved conflicts between the medical evidence and opinion evidence in determining Plaintiff's residual functional capacity.

In sum, the ALJ considered all of Plaintiff's complaints and allegations, but reasonably found that the severity of her claims was unsupported by the objective medical evidence beginning on March 2, 2015 (Tr. 35-41). See 20 C.F.R. § 404.1508 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statements of symptoms). The ALJ found that Plaintiff's treatment records documented improved functioning after her back surgery in early 2015 (Tr. 36). Specifically, the ALJ noted that Plaintiff was no longer taking pain medication by March 2, 2015 (Tr. 36, citing Tr. 641, 645). In fact, Plaintiff reported that she was doing great (Tr. 36, citing Tr. 645). Moreover, examination on this date showed full strength despite Plaintiff's complaints of subjective weakness in her legs (Tr. 36, referencing Tr. 645). She also had intact sensation, symmetric reflexes, negative straight leg raise testing, and no pain with hip range of motion, as the ALJ noted (Tr. 36, citing Tr. 645). As a result, Plaintiff was released to return to work, with restrictions only in lifting more than 20 pounds, but not in standing or walking (Tr. 36, referencing Tr. 644). The ALJ found that this was an indicator of improvement, because Plaintiff previously had a 10-pound lifting restriction (Tr. 36). Despite the minimal restrictions listed by Plaintiff's treating source, the ALJ included a much more limited residual functional capacity assessment, limiting her to a significantly reduced range of sedentary work, that required only

lifting 10 pounds.

In finding that Plaintiff's disability ended as of March 2, 2015, the ALJ also considered an April 2015 orthopedic examination, which showed intact knee ligaments, no pain with hip range of motion, and intact neurologic function (Tr. 36, citing Tr. 680-81). Plaintiff had full extension of the knees with flexion limited by obesity but not by mechanical dysfunction (Tr. 36, citing Tr. 680-81). While Plaintiff complained of knee pain, she did not have noise, crepitation (a crackling or rattling sound), or grinding, and she described the pain as only intermittent (Tr. 38, citing Tr. 680). The ALJ also considered that although Plaintiff used a cane, she had symmetric strides (Tr. 38, citing Tr. 680). Plaintiff's doctor recommended weight reduction and walking for exercise, and noted that she may need a knee replacement in the future, although he did not give a timeline. (Tr. 38, citing Tr. 681). Rather, he recommended that Plaintiff follow up with him in six months. *Id*.

Next, the ALJ cited evidence that Plaintiff demonstrated full strength, normal sensation, normal reflexes, negative straight leg raise testing and painless hip range of motion in May 2015 (Tr. 36, 38, citing Tr. 671). Plaintiff's radicular leg symptoms completely resolved after surgery (Tr. 38, citing Tr. 671). The ALJ noted that the treatment record did not reflect any significant pain behaviors, such as guarding or acute distress (Tr. 36, 37, citing Tr. 671). Dr. Winters indicated that Plaintiff could perform regular activities, as tolerated (Tr. 38, citing 672).

Plaintiff alleges that the ALJ erred in evaluating her use of assistive devices and asserts that she has used either a cane or a rolling walker since January 2013. (Pl. Br. 1). However, the ALJ extensively considered Plaintiff's use of assistive aids and included the use of a cane in both residual functional capacity assessments (Tr. 24-40). The ALJ cited substantial evidence that

13

Plaintiff could ambulate with a cane, rather than with a rolling walker as she now asserts. Most notably, Plaintiff testified that she had walked with a cane since January 2013, as the ALJ noted (Tr. 31, 37, referencing Tr. 82-83). At the hearing, Plaintiff did not assert that she required a rolling walker to ambulate.

Substantial evidence supports the ALJ's finding that Plaintiff could ambulate with a cane. The evidence shows that Plaintiff briefly used a walker after her March 2013 hip replacement, but as the ALJ noted, Plaintiff was able to ambulate with a cane by April 2013 (Tr. 29, 32, 36, citing Tr. 468). Next, the ALJ considered that Plaintiff was walking without a limp when using a cane at her three-month follow up (Tr. 30, citing Tr. 553, 556). The ALJ noted that Plaintiff had only a slight limp without the cane (Tr. 30, citing Tr. 556), and considered that in October 2013, Plaintiff had almost no limp without a cane and only a slight limp with one (Tr. 30, citing Tr. 561). Then, the ALJ cited evidence that Plaintiff was using a cane at a June 2014 orthopedic consultation (Tr. 30, citing Tr. 566). At the time of her back surgery in February 2015, Plaintiff had an antalgic gait with a cane, as the ALJ considered (Tr. 30, 36, citing Tr. 595). The ALJ reviewed evidence that Plaintiff used a cane in April 2015, but she had a symmetric gait (Tr. 32, 36, citing Tr. 680). The ALJ noted that Plaintiff was using a cane in May 2015 (Tr. 37, 38, citing Tr. 671). The ALJ also reviewed Plaintiff's daughter's report that she used a cane (Tr. 34, citing Tr. 277). In assessing Plaintiff's residual functional capacity for the period beginning March 2, 2015, the ALJ reasoned that the evidence showed some "residual right hip pain and the bilateral knee pain with use of a cane tor ambulation, which overall supports the continued restriction to lifting 10 lbs" (Tr. 38). While Plaintiff briefly used a walker after her 2013 hip surgery, this was during the period that the ALJ found her disabled. Substantial evidence, including Plaintiff's own

testimony, supports the ALJ's finding that she could ambulate with a cane, rather than with a rolling walker, during the relevant period.

Tthe ALJ found that the record after March 1, 2015 did not document the level of symptoms and distress documented during the prior period of disability (Tr. 37). The ALJ also reasonably found that Plaintiff's treatment notes did not support her allegations of greater limitations due to right hip, back, and knee pain, or obesity (Tr. 39). *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) ("Although a claimant can establish the severity of his symptoms by his own testimony, his subjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record.").

In assessing Plaintiff's residual functional capacity, the ALJ provided a well-reasoned subjective symptom evaluation that addressed the evidence in light of the factors set forth in the regulations (Tr. 24-40). This court must give an ALJ's subjective symptom evaluation special deference and reverses only if it is patently wrong, because the ALJ observed the Plaintiff's testimony at the hearing. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). An ALJ need not discredit a Plaintiff's individual statements. Rather, the ALJ need only minimally articulate the evidence that prompted him to generally distrust the Plaintiff's account of her limitations. *Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012) ("an ALJ's credibility findings need not specify which statements were not credible"); *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992) (ALJ must only "minimally articulate reasons for crediting or rejecting evidence of disability"). In the present case, this court finds that the ALJ sufficiently articulated and supported his subjective symptom analysis, such that his analysis is not "patently wrong".

Also, the ALJ reasonably articulated and weighed the evidence as it applied to the factors

set forth in the regulations. The ALJ found that the evidence did not support the degree of ongoing limitations that Plaintiff alleged from March 2, 2015 to the date of his decision (Tr. 38). See 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186 at *5. The ALJ considered several factors in his assessment of Plaintiff's subjective symptoms, including: (1) her complaints of disabling symptoms; (2) the evidence of improvement after surgery; (3) her minimal use of pain medication despite her claims of disabling pain; (4) her work history; and (5) the medical opinions of record.

The ALJ considered, and to a great degree credited, Plaintiff's allegations of disabling impairments. Most notably, the ALJ credited Plaintiff's allegations of severe pain and other symptoms in finding her disabled from March 22, 2013 through March 1, 2015. The ALJ also considered Plaintiff's complaints of pain for the period beginning March 2, 2015. In considering Plaintiff's complaints of pain, the ALJ also noted Plaintiff's testimony that her pain was typically a four out of ten in severity (Tr. 641). The ALJ explicitly cited Plaintiff's pain in his residual functional capacity finding as the reason that Plaintiff needed to alternate between sitting and standing (Tr. 37). Similarly, the ALJ cited Plaintiff's own testimony that she could lift about 10 pounds in reducing her to sedentary work (rather than finding she could lift 20 pounds, as her doctor opined) (Tr. 38). As discussed above, the ALJ also credited Plaintiff's reports that she needed a cane to ambulate, and he incorporated this into the residual functional capacity assessment (Tr. 37).

In contrast to Plaintiff's allegations of disabling pain and other symptoms, the ALJ cited evidence suggesting her symptoms were not as severe as alleged beginning March 2, 2015. (Tr. 37-40). As discussed above, the ALJ reviewed treatment records, which showed she was released

16

to work with a limit only in lifting more than 20 pounds. The ALJ also cited evidence that after surgery, Plaintiff was doing well, had full strength, intact sensation, symmetric reflexes, negative straight leg raise testing, no pain with hip range of motion, and intact neurologic function (Tr. 36, 38, citing Tr. 645, 671, 680-81). The ALJ also considered that Plaintiff's radicular leg symptoms had completely resolved after surgery (Tr. 38, citing Tr. 671). Plaintiff does not allege that the ALJ ignored or misstated any evidence. In fact, the ALJ explicitly considered the vast majority of Plaintiff's examining and treating source records, but found that they did not support the severity of limitations Plaintiff alleged.

The ALJ also considered Plaintiff's minimal use of pain medication in evaluating her claims of disabling pain. The ALJ cited evidence that Plaintiff was not taking pain medications as of March 2, 2015, the date he found her disability ended (Tr. 39, citing Tr. 641). In addition, the ALJ cited Plaintiff's testimony that she only took Aleve for pain (Tr. 31, 37). The ALJ reasonably found that Plaintiff's medication history was inconsistent with her allegations of disabling pain. *Gibson v. Massanari*, 18 F. App'x 420, 426 (7th Cir. 2001) (affirming ALJ's finding that claimant's pain was not disabling where evidence showed that claimant did not take pain medication the majority of the time). While Plaintiff alleges that she did not take stronger pain medications because of side effects, the ALJ did not find support for this claim in the record (Tr. 37-38). For example, when Plaintiff reported that she was not taking pain medications on March 2, 2015, she also reported that she was doing great (Tr. 36, citing Tr. 645). Even if Plaintiff was not taking pain medications due to side effects, as she now claims, her contemporaneous report of doing "great" without medication supports the ALJ's finding of medical improvement.

Next, the ALJ considered Plaintiff's work history in assessing her subjective symptom

allegations (Tr. 33, 39). See SSR 82-61, 1982 WL 31387 (1982) ("A basic program principle is that a claimant's impairment must be the primary reason for his or her inability to engage in substantial gainful work."). The ALJ considered the work report completed by a manager from Plaintiff's former employer, Fort Financial Credit Union, in April 2014 (Tr. 33, 39, citing Tr. 300-01). Plaintiff's former manager indicated that she was terminated for cause after being absent once a week on average, typically on a Monday or Friday (Tr. 300). The ALJ noted that the manager did not discuss Plaintiff's physical functioning, and instead focused on a long history of non-health related problems (Tr. 39). For example, the manager noted that Plaintiff's work was sloppy and slow; she revealed confidential information to the wrong people; and she was argumentative with coworkers and supervisors (Tr. 301). The ALJ noted that the manager's report conflicted with Plaintiff's testimony that she stopped working due to her impairments (Tr. 33). The ALJ considered this report and found that it did not reflect an inability to work due to a medically determinable impairment (Tr. 39). See 42 U.S.C. § 423(d) (defining disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment…").

As discussed above, the medical opinion evidence was also an important factor in the ALJ's subjective symptom analysis (Tr. 38-40). Importantly, the opinions of two treating sources, Drs. Winters and Wittbrodt, supported the ALJ's finding of non-disability. In Plaintiff's favor, the ALJ added numerous functional restrictions beyond those listed by her treating sources. Moreover, the two state agency medical expert opinions supported finding that Plaintiff could perform a range of sedentary work. While Ms. Drier opined that Plaintiff was more limited, the ALJ reasonably rejected her opinion because she was not a treating source and her opinion was

inconsistent with the other medical evidence.

Therefore, the ALJ's assessment of Plaintiff's residual functional capacity accommodated the work-related limitations supported by the credible evidence in the record. The ALJ weighed the medical findings, opinions, and Plaintiff's subjective complaints in assessing her residual functional capacity (Tr. 20-41). The ALJ largely credited Plaintiff's subjective complaints in finding she was limited to a significantly restricted range of sedentary work. Plaintiff has not identified any evidence that necessitated greater functional limitations than the ALJ included. (Pl. Br. 1). Although the ALJ credited most of Plaintiff's complaints, he was not obligated to believe all of Plaintiff's allegations where there was contrary evidence in the record. *Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006) (an ALJ "is free to discount the applicant's testimony on the basis of the other evidence in the case"). When faced with evidence both supporting and detracting from Plaintiff's allegations, this "the resolution of competing arguments based on the record is for the ALJ, not the court." *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002).

Plaintiff disagrees with the ALJ that a person with her RFC could perform any job in the national economy. However, the vocational expert (VE) explained at the hearing that a person with Plaintiff's RFC could perform work as insurance clerk a the sedentary exertional level per the DOT. The VE also testified that the other past job performed by Plaintiff was a hybrid position involving both auto parts clerk and payroll clerk, and that an individual with Plaintiff's RFC could perform work as a payroll clerk, as performed, per the DOT, although she could not perform work as an auto parts clerk.

Plaintiff also points out that she underwent knee evaluations on April 20, 2015 where advanced degenerative changes were identified. She also underwent a left ankle arthroplasty with

19

implant surgery on November 6, 2015 and June 10, 2016.  She also states that she required an anterior cervical discectomy and instrumental C5-6 and C607 fusion on April 4, 2017.  Plaintiff argues that these procedure are evidence of a pattern of relentless deterioration from the underlying osteoarthritis.  However, this court cannot consider evidence of impairment after the date of the ALJ's decision.  Nevertheless, if Plaintiff feels that the problems and surgeries that occurred after the ALJ's decision render her disabled, then Plaintiff may file a new application for disability, which would then include any medical evidence subsequent to the ALJ's decision in the present case.

## Conclusion

On the basis of the foregoing, the ALJ's decision is hereby AFFIRMED.

Entered: July 10, 2017.

s/ William C.  Lee  
William C. Lee, Judge  
United States District Court